## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

MICHAEL ZAMBRANO,
          Plaintiff,

v.                                                                                  CV No. 19-896 KWR/CG

ANDREW SAUL,
Commissioner of Social Security,
          Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** is before the Court on Plaintiff Michael Zambrano's *Motion to Reverse and/or Remand* (the "Motion"), (Doc. 26), filed March 11, 2020; Defendant Commissioner Andrew Saul's *Brief in Response to Plaintiff's Motion to Reverse and Remand the Agency's Administrative Decision* (the "Response"), (Doc. 31), filed May 18, 2020; and Mr. Zambrano's *Reply in Support of Motion to Reverse and/or Remand* (the "Reply"), (Doc. 32), filed June 1, 2020.

Mr. Zambrano filed an application for supplemental security income benefits on May 30, 2013, alleging disability beginning the same date. (Administrative Record "AR" 99, 230). In his application, Mr. Zambrano claimed he was unable to work due to anxiety, depression, post-traumatic stress disorder ("PTSD"), bipolar disorder, degenerative disc disease, and hepatitis C. (AR 262). Mr. Zambrano's application was denied initially on October 13, 2013, and upon reconsideration on January 4, 2014. (AR 113, 128). Shortly thereafter, Mr. Zambrano requested a hearing before an Administrative Law Judge ("ALJ"), which was held on September 25, 2015. (AR 56, 70).

At the hearing, ALJ Michelle Lindsay presided, and Mr. Zambrano appeared with his attorney Don Roberts and impartial Vocational Expert ("VE") Karen Provine. (AR

1

70). ALJ Lindsay issued an unfavorable decision on January 25, 2016, finding Mr.

Zambrano not disabled at any time from his alleged onset date, May 30, 2013, through

the date of the decision. (AR 64). Mr. Zambrano requested review by the Appeals

Council, which was denied, making ALJ Lindsay's unfavorable decision the

Commissioner's final decision for purposes of judicial review. (AR 6-7, 46-47).

Subsequently, Mr. Zambrano petitioned the United States District Court for the

District of New Mexico with a request to remand ALJ Lindsay's decision because she

ignored material evidence. (AR 903). The Honorable Kevin Sweazea agreed with Mr.

Zambrano and found ALJ Lindsay failed to properly consider probative evidence

material to his claim of disability. (AR 907). As a result, Judge Sweazea remanded Mr.

Zambrano's case to the Commissioner for further proceedings. (AR 907).

On remand, the Appeals Council ordered a rehearing on Mr. Zambrano's claim.

(AR 910). At the second hearing with ALJ Lindsay, Mr. Whitney appeared with his

attorney Benjamin Decker and impartial VE Leslie White. (AR 828). On July 25, 2019,

ALJ Lindsay determined Mr. Zambrano was not disabled from his alleged onset date,

May 30, 2013, through the date of the decision. (AR 819). After ALJ Lindsay issued her

decision, Mr. Zambrano directly petitioned this Court, and ALJ Lindsay's decision

became the operative decision for review before the Court. *See* 20 C.F.R. § 404.984(a)

("[W]hen a case is remanded by a Federal court for further consideration, the decision

of the administrative law judge will become the final decision of the Commissioner after

remand....").

In his Motion, Mr. Zambrano argues the following errors require remand: (1) the

ALJ failed to properly weigh and consider opinion evidence from Mr. Zambrano's

treating physician; (2) the ALJ failed to consider all relevant evidence in weighing and

affording great weight to the opinion of the physical consultative examiner; (3) the ALJ

applied an outdated legal standard in considering Mr. Zambrano's subjective

complaints; and (4) the ALJ failed to resolve a conflict between the Dictionary of

Occupational Titles ("DOT") and mental limitations in the decision's residual functional

capacity ("RFC") assessment. (Doc. 20 at 20-23).

On May 13, 2020, United States District Judge Kea W. Riggs referred this matter

to the undersigned to review ALJ Lindsay's decision, conduct legal analysis, and

recommend an ultimate disposition. (Doc. 28). The Court has reviewed the Motion, the

Response, the Reply, and the relevant law. Additionally, the Court has meticulously

reviewed the administrative record. Because the ALJ committed a harmful legal error,

the Court **RECOMMENDS** Mr. Zambrano's Motion be **GRANTED** and this case be

**REMANDED** to the Commissioner for further proceedings consistent with this opinion.

## I.      Standard of Review

The standard of review in a Social Security appeal is whether the

Commissioner's final decision is supported by substantial evidence and whether the

correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir.

2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98

(10th Cir. 1992)). If substantial evidence supports the Commissioner's findings and the

correct legal standards were applied, the Commissioner's decision stands and the

plaintiff is not entitled to relief. *See Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir.

2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331

F.3d 758, 760 (10th Cir. 2003). The Commissioner's "failure to apply the correct legal

standards, or to show . . . that she has done so, are also grounds for reversal." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996) (citing *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for the Commissioner's. *See Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214.

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal*, 331 F.3d at 760 (quoting *Fowler v. Bowen*, 876 F.2d 1451, 1453 (10th Cir.1989)) (internal quotation marks omitted). An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118 (quoting *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir.1988)) (internal quotation marks omitted) . While the Court may not re-weigh the evidence or try the issues *de novo*, its examination of the record must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (internal citations omitted). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)) (internal quotation marks omitted) (alteration made).

## II.    Applicable Law and Sequential Evaluation Process

A claimant establishes a disability when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§
423(d)(1)(A), 1382c (a)(3)(A) (2018); 20 C.F.R. §§ 404.1505(a), 416.905(a) (2019). In
order to determine whether a claimant is disabled, the Commissioner follows a five-step
sequential evaluation process ("SEP"). *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987);
20 C.F.R. §§ 404.1520, 416.920 (2019).

At the first four steps of the SEP, the claimant bears the burden of showing (1) he
is not engaged in "substantial gainful activity"; (2) he has a "severe medically
determinable . . . impairment . . . or a combination of impairments" that has lasted or is
expected to last for at least one year; and either (3) his impairment(s) meet or equal one
of the "listings"[1] of presumptively disabling impairments; or (4) he is unable to perform
her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i-iv), 416.920(a)(4)(i-iv); *Grogan*,
399 F.3d at 1261. If the ALJ determines the claimant cannot engage in past relevant
work, the ALJ will proceed to step five of the evaluation process.
20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1); *Grogan*, 399 F.3d at 1261. At step five, the
Commissioner bears the burden of showing the claimant is able to perform other work in
the national economy, considering the claimant's RFC, age, education, and work
experience. *Grogan*, 399 F.3d at 1261.

### III.    Background

In his application for supplemental security income, Mr. Zambrano alleged he
was limited in his ability to work due to anxiety, depression, PTSD, bipolar disorder,
degenerative disc disease, and hepatitis C. (AR 262). At step one, the ALJ determined
Mr. Zambrano had not engaged in substantial gainful activity since his alleged onset

---

1.      20 C.F.R. pt. 404, subpt. P, app. 1 (2019).

date. (AR 807). At step two, the ALJ found Mr. Zambrano had the following severe

impairments: spondylosis of the cervical and lumbar spine without myelopathy or

radiculopathy; PTSD; anti-social personality disorder with other cluster B personality

traits; major depressive disorder; and a history of polysubstance abuse. (AR 807). At

step three, the ALJ determined Mr. Zambrano's impairments did not meet or equal one

of the listed impairments in 20 C.F.R. §§ 416.920(d), 416.925, and 416.926. (AR 808).

The ALJ then found Mr. Zambrano had the RFC to perform "a limited range of light

work" with the following additional limitations:

> [He] is able to lift and/or carry and push and/or pull 20 pounds
> occasionally and 10 pounds frequently; [he] is able to sit and stand and/or
> walk for six hours out of an eight-hour workday; [he] can occasionally
> stoop, crouch, kneel, or crawl and never climb ladders, ropes, or scaffolds;
> [he] must avoid more than occasional exposure to extreme cold; [he] is
> limited to occasional overhead reaching with the non-dominant upper
> extremity; [he] is limited to understanding, remembering, and carrying out
> simple instructions and is able to maintain attention and concentration to
> perform only simple tasks for two hours at a time without requiring
> redirection to task; [he] can have no public contact and interactions with
> co-workers and supervisors should be superficial and incidental to the
> work performed; [he] requires work involving no more than occasional
> change in the routine work setting and no more than occasional
> independent goal setting or planning; and [he] cannot travel to unfamiliar
> places or use public transportation as a part of the job.

(AR 810).

In formulating Mr. Zambrano's RFC, the ALJ stated she considered Mr.

Zambrano's symptoms and the extent to which those symptoms could reasonably be

accepted as consistent with the objective medical and other evidence, as required by 20

C.F.R. § 416.929 and Social Security Ruling ("SSR") 16-3p. (AR 810). In addition, the

ALJ stated she considered opinion evidence consistent with the requirements of 20

C.F.R. § 404.927. (AR 810).

In weighing the opinion evidence, the ALJ gave little weight to the state agency physical consultants and psychiatric consultative examiner Paula Hughson, M.D. (AR 814-816). On the other hand, the ALJ gave significant weight to the state agency psychological consultants and physical consultative examiner, Jeffrey Glassheim, M.D. (AR 813-815). Next, the ALJ gave little weight to Mr. Zambrano's treating primary care provider Rick Cardenas, M.D. (AR 815-816). Finally, the ALJ gave little weight to a third-party statement from Mr. Zambrano's mother. (AR 816).

At step four, the ALJ found Mr. Zambrano had no past relevant work. (AR 817). At step five, the ALJ determined Mr. Zambrano had at least a high school education and could communicate in English. (AR 817). Relying on the VE's testimony, the ALJ found that considering Mr. Zambrano's age, education, work experience, and assessed RFC, he could perform other work as a router, routing clerk, and marker. (AR 817-818). Upon finding Mr. Zambrano was able to perform other work existing in significant numbers in the national economy, the ALJ concluded Mr. Zambrano was "not disabled," as defined by 20 C.F.R. § 416.920(g), and ended her analysis at step five. (AR 819). Mr. Zambrano's petition to this Court followed. (Doc. 1).

## IV.    Analysis

Mr. Zambrano presents four arguments in his Motion. (Doc. 26 at 20-23). First, Mr. Zambrano alleges the ALJ failed to properly weigh and consider Dr. Cardenas's opinion. *Id.* at 21. Second, Mr. Zambrano contends the ALJ failed to consider all relevant evidence in weighing and affording great weight to Dr. Glassheim's opinion. *Id.* at 22. Third, Mr. Zambrano argues the ALJ applied an outdated legal standard in considering his subjective complaints. *Id.* at 20. Finally, Mr. Zambrano asserts the ALJ

failed to resolve a conflict between the DOT and mental limitations in the RFC assessment. *Id.* at 20-21.

The Commissioner responds that the ALJ's decision is error-free and supported by substantial evidence. (Doc. 31 at 3). In particular, the Commissioner asserts the ALJ reasonably considered and properly assigned little weight to Dr. Cardenas's opinion. *Id.* at 7-9. Similarly, the Commissioner defends the ALJ's assignment of great weight to Dr. Glassheim's opinion. *Id.* at 9-11. Next, the Commissioner maintains the ALJ appropriately evaluated Mr. Zambrano's subjective complaints in accordance with the proper legal standards. *Id.* at 5-7. Finally, the Commissioner contends there was no conflict between the VE's testimony and the DOT, and therefore, the ALJ was not required to resolve a purported conflict. *Id.* at 11-12.

   a.  *The ALJ's Analysis of Dr. Cardenas's Opinion*

Mr. Zambrano first contends the ALJ improperly weighed Dr. Cardenas's opinion and this harmful error requires remand. (Doc. 26 at 21-22). Specifically, Mr. Zambrano alleges the ALJ failed to consider significantly probative evidence that supported Dr. Cardenas's opinion, including records from orthopedic specialist Richard Wallach, M.D., that bolster Mr. Zambrano's allegations of severe pain. *Id.* at 21. Additionally, Mr. Zambrano asserts the ALJ failed to mention the frequency and duration of Dr. Cardenas's treatment history with Mr. Zambrano. *Id.* Finally, Mr. Zambrano argues the ALJ failed to give Dr. Cardenas's opinion special deference, despite Dr. Cardenas's role as Mr. Zambrano's treating physician. *Id.* at 22.

The Commissioner responds that the ALJ provided valid reasons tied to the regulatory factors for giving little weight to Dr. Cardenas's opinion. (Doc. 31 at 7-8). The

Commissioner argues the ALJ discussed, and therefore considered, evidence Mr.

Zambrano contends was ignored. *Id.* at 8. Thus, according to the Commissioner, Mr.

Zambrano's argument asks the Court to impermissibly reweigh the evidence. *Id.*

Although ALJs need not discuss every piece of evidence, they are required to

discuss the weight assigned to each medical source opinion. *Keyes-Zachary v. Astrue*,

695 F.3d 1156, 1161 (10th Cir. 2012) (citing 20 C.F.R. §§ 404.1527(e)(2)(ii),

416.927(e)(2)(ii)).[2] That is, when assessing a plaintiff's RFC, an ALJ must explain what

weight she assigns to each opinion and why. *Id.* "Treating sources" are generally

entitled to more weight than other sources. *See* 20 C.F.R. § 416.927(c)(2). Indeed, a

treating source's opinion is entitled to "controlling weight" if it is both "supported by

medically acceptable clinical and laboratory diagnostic techniques" and is "not

inconsistent with the other substantial evidence" in the record. *Id.* If the ALJ fails to

provide explicit analysis on whether the opinion deserves controlling weight, the Tenth

Circuit has explained that a reviewing court may determine an ALJ "implicitly declined to

give the opinion controlling weight," thereby negating grounds for remand. *Mays v.

Colvin*, 739 F.3d 569, 575 (10th Cir. 2014).

If the treating source's opinion is not given controlling weight, the ALJ must next

consider several factors in determining how much weight to assign the opinion. 20

C.F.R. § 416.927(c). Those factors are as follows: "(1) Length of the treatment

relationship and the frequency of examination…; (2) Nature and extent of the treatment

relationship…; (3) Supportability…; (4) Consistency…; (5) Specialization…; and (6)

---

2.     These regulations apply because Mr. Zambrano's application was filed
prior to March 27, 2017. *See* 82 Fed. Reg. 5844 (Jan. 18, 2017).

Other factors….” 20 C.F.R. § 416.927(c)(i)(ii), (c)(3)-(c)(6) (the “§ 416.927 factors”); *see also Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003). An ALJ need not explicitly discuss every factor. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

However, the ALJ must at least provide an explanation that is “sufficiently specific to [be] clear to any subsequent reviewers.” *Langley*, 373 F.3d at 1119 (citation omitted). Furthermore, the ALJ’s stated reasons for the assigned weight must be supported by substantial evidence. *See Doyal*, 331 F.3d at 764. Substantial evidence requires that an ALJ discuss uncontroverted evidence she chooses not to rely on, significantly probative evidence she rejected, and the evidence supporting her decision. *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).

In his opinion, Dr. Cardenas provided limitations greater than the ALJ’s RFC, including a limitation of less than two hours of sitting, standing and/or walking in an eight-hour day, unscheduled breaks throughout the workday, rare lifting of twenty pounds, and absence from work more than four days per month. (AR 815-816). The ALJ explained that she gave little weight to Dr. Cardenas’s opinion because it was “not at all consistent with the imaging studies showing mild degenerative changes and the orthopedic records [authored by Dr. Wallach], which show no radiculopathy….” (AR 816). Additionally, the ALJ stated she found these same records inconsistent with Mr. Zambrano’s complaints of severe pain at the hearing. (AR 816). Finally, the ALJ noted that Dr. Cardenas was Mr. Zambrano’s “primary care physician and not a specialist,” and he had been treating Mr. Zambrano since 2015 (AR 815-816).

In her decision, the ALJ “implicitly” declined to give controlling weight to Dr. Cardenas’s opinion, a conclusion that is evident from her assignment of little weight.

See *Mays*, 739 F.3d at 575. After determining Dr. Cardenas's opinion was not entitled to

controlling weight, the ALJ was then required to consider the § 416.927 factors to

determine how much weight the opinion should be assigned. First, the ALJ cited

inconsistency between Dr. Cardenas's opinion and evidence from diagnostic test results

and orthopedic records authored by Dr. Wallach. (AR 816). This explanation aligns with

the fourth factor—the degree to which the opinion is consistent with the record. 20

C.F.R. § 416.1527(c)(4). The ALJ also cited to Dr. Cardenas's lack of specialization,

which corresponds to the fifth factor—whether the treating source is a specialist in the

area in which an opinion is rendered. 20 C.F.R. § 416.927(c)(5). Finally, the ALJ noted

Dr. Cardenas had treated Mr. Zambrano since 2015, a point that corresponds to the first

factor—the "[l]ength of the treatment relationship and the frequency of examination." 20

C.F.R. § 416.927(c)(2)(i); (AR 815). As pointed out by Mr. Zambrano, the ALJ neglected

to mention the frequency of visits. *See* (Doc. 26 at 21). In total, the ALJ addressed three

of the six § 416.927 factors.

While the ALJ did not need to cite every § 416.927 factor, her stated reasons for

the assignment of weight and the considerations supporting each identified factor must

be supported by substantial evidence. *See Doyal*, 331 F.3d at 764. In an earlier portion

of her RFC discussion, the ALJ discussed diagnostic test results, Dr. Wallach's physical

examination findings, and courses of treatment Dr. Wallach prescribed. (AR 812-813).

In her assignment of little weight to Dr. Cardenas's opinion, the ALJ referenced this

medical evidence in support of her determination. (AR 816). However, Mr. Zambrano

contends the ALJ failed to fully consider Dr. Wallach's treatment records when weighing

Dr. Cardenas's opinion. (Doc. 26 at 21-22).

In the Court's own examination of Dr. Wallach's orthopedic records, they reveal an assortment of findings, both supportive and in conflict with Dr. Cardenas's opinion. (AR 1110-1153). For example, on several occasions Mr. Zambrano reported to Dr. Wallach that he received significant relief from radiofrequency treatments, up to 75 percent relief. *See, e.g.*, (AR 1112, 1114, 1117, 1121). The ALJ took note of such improvement in her decision, and correctly cited to two appointments in which Mr. Zambrano made such statements. (AR 812-813). Yet, the ALJ did not specifically cite to this improvement in her consideration of Dr. Cardenas's opinion, a point the Commissioner admits. *See* (Doc. 31 at 9) ("The ALJ did not…explicitly consider [Mr. Zambrano's] improvement when evaluating Dr. Cardenas's opinion.").

Moreover, despite improvement in his symptoms, Mr. Zambrano continued to complain of pain. For instance, at his April 2017 appointment with Dr. Wallach, Mr. Zambrano complained of neck pain and lower back pain that radiated into his thigh. (AR 1117). In addition, Mr. Zambrano reported numbness, pain with activities, neck pain, locking, clicking, and instability. (AR 1117). Further, at both his April 2017 appointment and subsequent appointments in July 2017 and February 2019, Mr. Zambrano complained of pain levels ranging from 6 to 8, on a scale of 1 to 10. (AR 1110, 1114, 1117). The ALJ neither evaluated Mr. Zambrano's continued complaints of pain in her RFC assessment discussion or in her analysis of Dr. Cardenas's opinion. (AR 812-813, 816). Indeed, while the ALJ outlined Dr. Wallach's findings from his April 2017 appointment, the ALJ did not discuss Mr. Zambrano's continued reports of pain and other functional complaints made. *Compare* (AR 813) *with* (AR 1117).

Further, in discussing Mr. Zambrano's April 2019 appointment, the ALJ noted Dr.

12

Wallach's observations of a normal gait, coordination, and balance. (AR 813). However, the ALJ failed to discuss contrary findings that conflicted with the RFC assessment and conflicted with her determination to give little weight to Dr. Cardenas's opinion. (AR 813). These findings include Mr. Zambrano's limited range of motion and tenderness in his cervical and lumbar spine, and absent reflexes in his right upper extremity and ankles. *Compare* (AR 813, 815) *with* (AR 1112).

Having not cited to conflicting evidence from Dr. Wallach's April 2019 appointment, and having failed to acknowledge Mr. Zambrano's continued complaints of pain and alleged functional limitations, the ALJ's decision does not demonstrate that she considered all significantly probative evidence. *See Clifton*, 79 F.3d at 1009 (holding that substantial evidence requires consideration of both evidence supportive of the ALJ's determination but also significantly probative evidence the ALJ rejected). Indeed, the ALJ's selective omission of conflicting evidence constitutes impermissible cherry-picking of evidence. *See Bryant v. Comm'r, SSA*, 753 F. App'x 637, 641 (10th Cir. 2018) ("[A]lthough an ALJ is entitled to resolve conflicts in the record…she may not 'pick and choose among medical reports, using portions of evidence favorable to [her] position while ignoring other evidence,' or mischaracterize or downplay evidence to support her findings.") (quoting *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004)) (internal citations omitted).

In support of the ALJ's analysis, the Commissioner contends the ALJ considered all pertinent evidence from Dr. Wallach's records. (Doc. 31 at 8). The Commissioner is correct that the ALJ considered some pertinent evidence from Dr. Wallach's records, and used this evidence in support of her RFC assessment and, by simple reference,

used this evidence in support of her assignment of little weight to Dr. Cardenas's

opinion. However, the Commissioner incorrectly argues that the ALJ considered all

significantly probative evidence. Moreover, rather than discussing with specificity Dr.

Wallach's treatment notes that both supported and conflicted with Dr. Cardenas's

opinion, the ALJ cursorily referred back to her prior discussion. (AR 816). Such opinion

analysis fails to provide the "sufficiently specific" explanation required for rejecting an

opinion, particularly a treating source's opinion. *See Clifton*, 79 F.3d at 1009 (stating

that because of "the absence of ALJ findings supported by specific weighing of the

evidence" the court was unable to "assess whether relevant evidence adequately

supports the ALJ's conclusion"); *see also Perrault v. Berryhill*, No. CV 18-467 CG, 2019

WL 430869, at *7 (D.N.M. Feb. 4, 2019) (finding the ALJ was insufficiently specific in

her explanation for giving little weight to a treating source's opinion by stating the

opinion was inconsistent with "generally…intact neurological findings" and "many

normal musculoskeletal findings" but failing to provide specific citations or discussion of

the evidence).

In short, given the deference afforded to a treating physician's opinion, the ALJ's

failure to properly discuss all pertinent probative evidence in relation to Dr. Cardenas's

opinion results in the ALJ's analysis being insufficiently specific and unsupported by

substantial evidence. Therefore, because the ALJ erred in her analysis of Dr.

Cardenas's opinion, the Court **RECOMMMENDS** Mr. Zambrano's case be

**REMANDED**.

## V.     Conclusion

For the previously stated reasons, the Court finds the ALJ failed to properly

assess Dr. Cardenas's opinion. Because this is a harmful error, the Court will not

address Mr. Zambrano's remaining arguments.

Consistent with the foregoing, the Court **RECOMMENDS** that Mr. Zambrano's

*Motion to Reverse and/or Remand*, (Doc. 26), be **GRANTED** and the case **REMANDED**

to the Commissioner for additional proceedings consistent with this opinion.

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

THE HONORABLE CARMEN E. GARZA
CHIEF UNITED STATES MAGISTRATE JUDGE